UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACHELLE CARDENAS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a Texas corporation; AMERICAN AIRLINES GROUP, INC., a publicly traded Delaware corporation; Tony LNU, an individual; and DOES 1 through 100,<br><br>Defendants. | Case No.: 17cv2513-GPC(JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 37.]** |

Defendant American Airlines, Inc. filed a motion for summary judgment, or in the alternative summary adjudication of the causes of action in the first amended complaint. (Dkt. No. 37.) Plaintiff Machelle Cardenas filed an opposition and Defendant replied. (Dkt. Nos. 40, 41.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment.

/ / / /

/ / / /

/ / / /

/ / / /

**Background**

On April 30, 2018, Plaintiff Machelle Cardenas ("Plaintiff") filed the operative first amended complaint[1] ("FAC") against Defendants American Airlines, Inc. ("Defendant" or "AA") and American Airlines Group, Inc.[2] alleging wrongful refusal to transport pursuant to the Federal Aviation Act, 49 U.S.C. § 44902(a)(1), breach of contract, negligence, assault and battery, false imprisonment and intentional infliction of emotional distress for excluding her from a flight at the Dallas/Fort Worth ("DFW") airport and then cancelling future flight reservations and temporarily barring her from buying any tickets without justification. (Dkt. No. 18, FAC.)

On August 27, 2017, Plaintiff and her son were traveling on an American Airlines flight from San Diego, CA to Washington D.C. with a connection at the DFW airport. (Dkt. No. 43, P's Suppl. Response to SSUF, Nos. 1, 7.) During the flight from San Diego to DFW, passengers were told the airport had shut down due to a hurricane coming in and their flight was in a holding pattern until they were able to land. (Id., No. 2.) The flight arrived about 2 hours late and Plaintiff and her son missed their connecting flight. (Id., No. 3; Dkt. No. 40-2, Menck Decl., Ex. A, Cardenas Depo. at 17:2-12.)

While Plaintiff and her son were waiting in line at DFW to rebook their connecting flight, an American Customer Service Manager, Tony Redelfs ("Redelfs"), was passing out cards to passengers in line instructing them to call the number to get help to get on the next flight out. (Dkt. No. 43, P's Suppl. Response to SSUF, No. 7.) Plaintiff called the number and was booked on the next flight. (Id., No. 8.) The person on the phone that re-booked the flight told Plaintiff to remain in line so she could make sure AA knew where her luggage was going. (Id., No. 9.) Plaintiff claims she stood in line for 30 to 45 minutes before leaving the line to approach Redelfs. (Id., Nos. 10.) Plaintiff testified she

---

[1] On December 15, 2017, Plaintiff filed the original complaint and the Court granted Defendant's motion to dismiss with leave to file a first amended complaint. (Dkt. Nos. 1, 16.)
[2] American Airlines Group, Inc. is a named defendant, and has not appeared in this case. It is not clear whether American Airlines Group, Inc. has been served.

2

approached the counter at Gate A-20 where Redelfs was helping another customer. (Id., No. 11.)

At this point, the parties' facts differ on how Plaintiff approached Redelfs. Plaintiff testified she waited for a break while Redelfs was helping a customer and then touched Redelfs on the shoulder to get his attention, saying, "[e]xcuse me, can you help me?" (Id., No. 12.) She continued with, "You said you would send over some agents and nobody's came (sic). It's been 45 minutes. Can you help us?" (Dkt. No. 40-2, Menck Decl., Ex. A, Cardenas Depo. at 31:12-19.) While she was talking, Redelfs did not look up, kept typing and asked if she had a ticket. (Id. at 31:19-24.) Plaintiff then gave him her ticket and he said, "You're no longer flying on American. You just assaulted me." (Id.) He also said "See all these cameras? You're getting videotaped. And you just assaulted me." (Id. at 32:7-9.) Redelfs told the agent next to him to "[c]all security" but the female agent looked up, looked at him, looked at Plaintiff and went back to what she was going. (Id. at 32:4-6.) Redelfs turned to the agent again and said "I told you to call security" and she slowly picked up the phone and called security. (Id. at 32:4-6; 12-15.) Redelfs told her, "You cannot go anywhere. You need to stay right here. You're getting arrested." (Id. at 33:2-4.) Plaintiff stated that she begged him and cried stating she was traveling with her son. (Id. at 32:16-19.) Two minutes later security arrived. (Id. at 33:23-25.) Plaintiff testified that nobody told her that she was not flying because it would be inimical to the safety of the aircraft or that she was unfit to fly. (Id. at 55:13-23.)

In contrast, Redelfs testified that Plaintiff approached his left side, grabbed his arm, spun him to face her and said "you lied to me; You said you were going to get more people here." (Dkt. No. 40-2, Menck Decl., Ex. B, Redelfs Depo. at 56:11-17.) He said that he next asked for her boarding pass and then he told her she would not be flying with AA because what she did constituted assault. (Id. at 56:19-21.) Redelfs testified that he did not call the DFW police and it was the agent at the gate with him that called on her own. (Id. at 23:13-25.)

3

The Passenger Name Record, ("PNR"), written by Redelfs contemporaneously or shortly after the incident states, "Customer became irate and approached me and shoved me due to being upset at the service center line. Reservation cancelled." (Dkt. No. 40-2, Menck Decl., Ex. B at 207[3]; id., Ex. B., Redelfs Depo. at 50:20-22.)

Plaintiff's reservation was canceled and her ticket was subsequently placed in "no-go" status which means she could not use her ticket any more but she could have gotten another ticket to fly out of DFW. (Dkt. No. 40-2, Menck Decl., Ex. B, Redefls Depo. at 32:1-7; 91:14-20; Dkt. No. 43, P's Supp. Response to SSUF, No. 33.) Redelfs explained that he has the authority to cancel a flight but is unable to put somebody on the no-go list; instead, he needs approval from the System Customer Service Manager, ("SCSM") who is in DFW but not on the airport property. (Dkt. No. 40-2, Menck Decl., Ex. B, Redelfs Depo. at 58:11-21; 59:19-60:1.) During the incident, Redefls called and told the SCSM what happened. (Id. at 60:2-25.) The SCSM also reviewed the PNR that Redelfs wrote. (Id.) After hearing what happened from Redelfs and reviewing the PNR, the SCSM put Plaintiff's ticket in no-go status. (Id.) At his deposition, Redelfs testified that he believed that she was dangerous to other passengers because she could not control her emotions or behavior. (Id. at 75:19-24.)

In an incident report dated October 5, 2017, a little over a month after the incident, Redelfs wrote,

> Customer was in line at the A service center. After handing out the RICAP cards, I assisted another customer at the front of the line with her connection through London to Frankfurt. I asked her to come with me to the A20 gate counter to get her information. While I was working with her reservation, Mrs. Cardenas grabbed my left arm and spun me around to face her, put her finger in my face, and yelled at me. She said that I lied to her, and that I said I would bring more agents over, but did not. Instead, she alleged I was just bringing random people over to A20 to help them and letting people jump the line. At that point, I explained that she would not be travelling, as what she had done constituted assault. She began to cry and sat down in the gate

---

[3] Page numbers are based on the CM/ECF pagination.

>area. DPS responded and spoke to her, but to my knowledge, did not make a report. Customer apologized profusely, but I still did not let her travel. I called the SCSM and had her ticket placed in No Go Status.

(Dkt. No. 40-2, Menck Decl., Ex. B at 226.)

A couple of minutes after the incident, two female officers from the Dallas Fort Worth Police Department arrived at the scene. (Dkt. No. 43, P's Suppl. Response to SSUF, No. 19.) The officers were cordial and did not ask for Plaintiff's ID. (Id., No. 20.) Plaintiff testified that she told the officers her story and they said they were going to speak with Redelfs. (Id., No. 21.) Plaintiff testified that the two officers left her to speak with Redelfs and they were gone for two to three minutes. (Id., No. 22.) Plaintiff testified that after speaking with Redelfs, the police told her, "He's not going to have you arrested, but you're not going to fly on that flight. You're not flying on American." (Id., No. 23.) Plaintiff testified that the officers told her, "go to the gate with your son. See if you can get on the plane, explain to the gate agent what happened or to another customer service . . . ." (Id., No. 24.) When Plaintiff arrived at the gate at Terminal C with her son, she testified that she was told that the agent could not get into her record and her whole itinerary was cancelled. (Id., No. 25.) The agent told her to exit security, go downstairs and buy another ticket on the flight as there were plenty of seats. (Dkt. No. 40-2, Menck Decl., Ex. A, Cardenas Depo. at 43:6-22.) Plaintiff then went downstairs to buy another ticket but the agent there told her that her account was locked out. (Id. at 44:1-4.) The agent made a phone call to Redelfs and told her "You're not going to be flying tonight. And I can't get you a ticket for tomorrow either. Your account's locked, and the agent's not changing his mind." (Id. at 44:5-14.)

Plaintiff then called to buy another ticket with another airline but was not successful as there no more flights to Washington D.C. that evening. (Dkt. No. 40-2, Menck Decl., Ex. A, Cardenas Depo at 46:3-22.) She went to a hotel and could not sleep and around 2:00 a.m. she was able to login to her AA account, booked a flight at 6:00

5

a.m. and successfully boarded the flight and arrived in Washington D.C. (Id. at 47:19-48:16.)

## Discussion

**A.      Summary Judgment Legal Standard**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B.     Federal Aviation Act, 49 U.S.C. § 44902(b)**

As a threshold matter, Defendant argues summary judgment is warranted on the first cause of action for violation of 49 U.S.C. § 44902(b) because it does not create a private right of action; however, it makes a summary statement in its introduction and does not present legal authority to support its position. In response, Plaintiff fails to address Defendant's argument. Neither party has sufficiently analyzed whether 49 U.S.C. § 44902 provides a private right of action.

The Ninth Circuit has held that the FAA does not expressly create a private right of action nor does it create an implied private right of action. In re Mexico City Aircrash of Oct. 31, 1979, 708 F.2d 400, 408 & n. 12 (9th Cir. 1983) ("We conclude that the Federal Aviation Act does not contain an implied private right of action."); see Air Transport Ass'n v. Public Utilities Comm'n, 833 F.2d 200, 207 (9th Cir. 1987) (§ 1305(a) of the FAA did not create a private right of action); Montgomery v. American Airlines, 637 F.2d 607, 610 (9th Cir. 1980) (no private action based on claim that airline's reduced fare policy for employees violated FAA), cert. denied, 450 U.S. 920 (1981). Other courts have also held the same on different provisions of the FAA. See Anderson v. USAir, Inc., 818 F.2d 49, 54 (D.C. Cir. 1987) (no implied private right of action under § 404(a) of the FAA requiring carriers to provide safe and adequate service); Bonano v. E. Carribean Airline Corp., 365 F.3d 81, 83-86 (1st Cir. 2004) (conducting analysis on whether Congress intended private enforcement of FAA and concluding that the FAA "intended public, not private, enforcement."); Schmeling v. NORDAM, 97 F.3d 1336, 1344 (10th Cir. 1996) (no private right of action to enforce drug testing laws under 49 U.S.C. §§ 46106-46108); Wolf v. Trans World Airlines, Inc., 544 F.2d 134, 136 (3d Cir.

1976) (no implied private right of action under 49 U.S.C. §§ 1373(b) and 1381 of the FAA); Goonewardena v. AMR Corp., No. 08cv4141, 2008 WL 5049904, at *3 (E.D.N.Y. Nov. 25, 2008) (FAA does not provide a private right of action).

In Cerqueira, the First Circuit acknowledged that § 44902 itself does not provide for judicial review of decisions for refusing to transport a passenger, but courts have adjudicated actions involving § 44902(b) which are "brought under other general statutes which prohibit discrimination such as § 1981 and Title VI of the Civil Rights Act." Cerqueira v. American Airlines, Inc., 520 F.3d 1, 13 (1st Cir. 2008); see Watan v. American Airlines, Inc., 570 F. Supp. 2d 925, 930 931 n. 5 (E.D. Mich. 2008) (recognizing that § 44902 itself does not provide for judicial review of decisions to refuse transportation but denying motion to dismiss because sufficient facts were alleged under the relevant federal discrimination statutes). The Cerqueira court noted that some courts have described § 44902 "as a defense in the nature of an immunity". Id. at 13.

Here, Plaintiff seeks adjudication for a violation of § 44902(b) without an accompanying statutory claim. (Dkt. No. 18, FAC ¶¶ 19-39.) Because the FAA does not, by itself, provide a private right of action, the Court GRANTS Defendant's motion for summary judgment on the first cause of action for violation of 49 U.S.C. § 44902.

**C.   Preemption**

Defendant next asserts that the state law claims are preempted by the FAA because § 44902 concerns aviation safety which occupies an area that FAA intended to regulate. Plaintiff argues that AA's conduct is not preempted by the FAA concerning regulation over flight safety because AA precluded her from flying because she assaulted him at the service center and not for safety reasons.

Congress has the power to preempt state law. U.S. Const. Art. VI, cl. 2; Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Congress may preempt state law expressly or impliedly. Id. Under implied preemption, there is conflict preemption and field preemption. Conflict preemption occurs when a state law "actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress in enacting the federal law." Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007). "[F]ield preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law." Id.

The FAA provides that air carriers "may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b). The Ninth Circuit has held that the FAA along with its regulations demonstrate Congress' intent to preempt all state law in the "entire field of aviation safety" through implied field preemption. Montalvo, 508 F.3d at 468, 471, 474 (claims regarding failure to warn of deep vein thrombosis ("DVT") resulting from prolonged seating fail as a matter of law as there is no federal requirement that airlines warn passengers about the risk of developing DVT); Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009) ("The Federal Aviation Act has no express preemption clause.").

In Martin, the Ninth Circuit further defined the preemptive effect of the FAA stating "when the agency issues 'pervasive regulations' in an area, like [the] passenger warnings [at issue in Montalvo], the FAA preempts all state law claims in *that* area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." 555 F.3d at 811. In Martin, a pregnant plaintiff and her fetus sustained injuries when she fell from an airplane's stairs. Id. at 808. The Ninth Circuit explained that because the FAA had not comprehensively regulated airplane stairs, the court held that the state tort claims involving airplane stairs were not preempted by federal law. Id. at 812. As described by one district court, "[t]he FAA's preemptive scope is coextensive with the pervasiveness of federal regulations in any particular area of law. In some areas without pervasive federal regulations, state standards of care may still apply." Register v. United Airlines, Inc., Case No., 16cv2480-W(BGS), 2017 WL 784288, at *2 (S.D. Cal. Mar. 1, 2017) (citing Martin, 555 F.3d at 808 and Ventress v. Japan Airlines, 747 F.3d 716, 721-22 (9th Cir. 2014)).

In this case, it is not disputed that if Defendant's conduct of placing Plaintiff in "no go" status was due to airline safety reasons, Plaintiff's state law claims would be preempted. But Plaintiff argues that Defendant's actions were not due to safety reasons. The Court agrees. The facts surrounding the incident and the conduct of Redelfs and the SCSM do not demonstrate that they precluded Plaintiff from flying due to safety reasons. Defendant's citation to cases where the court held the state law claims were preempted are not supportive because in those cases, it was clear that the passengers were removed due to safety reasons.

For example, in <u>Shaffey</u>, the Ninth Circuit held that the plaintiff's state law claims were preempted because the FAA occupies the entire field of aviation safety and because her claims directly implicate the pilot's decision to remove her from the flight for safety reasons. <u>Shaffey v. United Airlines</u>, 360 Fed. App'x 729, 730-31 (9th Cir. 2009) (unpublished). In <u>Shaffey</u>, the plaintiff repeatedly removed her dog from its container contrary to the flight attendant's directions not to. After receiving a number of calls from different flight attendants about the plaintiff's conduct of removing her dog from its container, the captain decided the dog presented a safety issue because it "could bite a passenger or upset passengers or crew members by urinating or defecating on them. The captain also concluded that [the plaintiff] presented a potential safety risk because of her failure to obey crew instructions. The captain decided to have [the plaintiff] removed from the flight when it made a scheduled stop in Las Vegas." <u>Id.</u> at 730.

In <u>Register v. United Airlines, Inc.</u>, Case No. 16cv2480-W(BGS), 2017 WL 784288 (S.D. Cal. Mar. 1, 2017), the court held that the FAA preempted all state law impinging upon the circumstances under which an air carrier may remove a passenger from a flight for safety reasons based on the fact that the captain diverted the aircraft because of a "situation" onboard which requires an inquiry into the "federally occupied field of flight safety." <u>Id.</u> at *3.

In <u>Mercer</u>, the plaintiff, an African-American, was refused transport after a dispute about the amount of carry-on baggage he was allowed to bring onboard. <u>Mercer v.</u>

10

17cv2513-GPC(JLB)

Southwest Airlines Co., Case No. 13cv5057-MEJ, 2014 WL 4681788 (N.D. Cal. Sept. 19, 2014). The court held that Plaintiff's state law claims directly implicate airline safety because a flight crew member explicitly told Plaintiff that the captain considered him a security threat. Id. at 5.

Here, besides Redelf's deposition testimony taken during the litigation, Defendant has not provided any contemporaneous evidence that Plaintiff's placement in no-go status was due to safety concerns. The contemporaneous notes of the NPR states that Plaintiff's reservation was cancelled because she shoved Redelfs, not due to safety reasons. In the subsequent October 5, 2017 incident report, Redelfs wrote that Plaintiff grabbed his arm, spun him around to face her, put her finger in his face and yelled at him. There is no reference to a safety threat in the incident report. When the DFW police arrived a few minutes later and spoke with Plaintiff and Redelfs, the police officers told her she would not be arrested and told her to try to get on the plane by going to the gate agent. The DFW police's direction that she try to get on the flight demonstrates that she was not considered a safety threat. Furthermore, when she arrived at the gate, the agent, when she was unable to get into Plaintiff's account, assisted Plaintiff by telling her to go and buy another ticket on the same flight, which does not demonstrate she was a safety risk. Finally, the fact that Redelfs testified that she could easily have purchased another ticket refutes the argument that she was considered a safety threat. Accordingly, Defendant has not demonstrated that the SCSM's decision to put Plaintiff in no-go status was due to safety concerns. Therefore, Plaintiff's state law claims are not preempted by the FAA.

Because Plaintiff's state law claims are not preempted, the Court considers Defendant's motion for summary adjudication on the state law claims.

**D.     Breach of Contract**

Defendant moves for summary judgment contending that Plaintiff failed to produce evidence of the contract she alleges was breached. To the extent she is alleging a breach of contract of the contract of carriage, Defendant asserts she has not alleged or demonstrated a breach of specific terms of the contract of carriage. Plaintiff opposes

summarily arguing that "AA breached the terms of its contract when it refused passage to her under the circumstances." (Dkt. No. 40 at 14.)

The elements for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (citing Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968)).

Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Here, Plaintiff has failed to produce the alleged contract between Plaintiff and AA that was breached, and consequently, failed to provide evidence of an essential element required to support a breach of contract cause of action. See Eckerle v. Deutsche Bank Nat'l Trust, 580 Fed. App'x 527, 528 (9th Cir. 2014) (affirming grant of summary judgment as there was no evidence of the existence of a contract); Hodges v. Delta Airlines, Inc., No. C09-1547-BAT, 2010 WL 5463832, at *6 (W.D. Wash. Dec. 29, 2010) (granting summary judgment where plaintiff failed to provide the existence of a contract). Because Plaintiff has not presented the contract that was allegedly breached, the Court GRANTS Defendant's motion for summary judgment on the breach of contract claim.

**E.     Assault and Battery**

Defendant argues that Plaintiff has not produced any evidence that she suffered an assault or a battery. Plaintiff does not dispute Defendant's argument that she did not suffer a battery. On the assault, claim, Plaintiff summarily contends that an assault occurs when the anticipation of harm occurs which is detailed in the FAC and to which she testified at the deposition, (Dkt. No. 40 at 14), but she does not point to specific facts in the record that there is a genuine issue for trial.

In California, the crime and tort of assault assume the Penal Code definition of assault. Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1604 (2012) (citing 5 Witkin,

Summary of Cal. Law (10th ed. 2005) Torts, § 381, p. 598). An assault requires "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Id. In other words, it "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." Id. An assault is a "demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." Lowry v. Standard Oil Co., 63 Cal. App. 2d 1, 6-7 (1944). "The tort of assault is complete when the anticipation of harm occurs." Kiseskey v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d 222, 232 (1983). A person can commit an assault without ever touching the victim. People v. Wyatt, 55 Cal. 4th 694, 702 (2012).

The parties do not dispute that Redelfs never touched Cardenas. (Dkt. No. 43, P's Suppl. Response to SSUF, No. 32; Dkt. No. 37-7, Redefs Decl. ¶ 2.) Plaintiff also testified that Redelfs did not become agitated after she touched him, instead he kept typing. (Dkt. No. 43, P's Suppl. Response to SSUF, No. 18; Dkt. No. 40-2, Menck Decl., Ex. A, Cardenas Depo. at 56:3-10.) Plaintiff has failed to present any evidence to create a genuine issue of dispute that she anticipated any harm would occur to her. Thus, the Court GRANTS summary judgment on the assault claim.

Civil battery requires the following elements: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 536-27 (2009); Rains v. Superior Ct., 150 Cal. App. 3d 933, 938 (1984) ("A battery is a violation of an individual's interest in freedom from intentional, unlawful, harmful or offensive unconsented contacts with his or her person."). Here, Plaintiff does not oppose Defendant's motion on this ground, and there is no indication that Redelfs touched or intended to touch Plaintiff. Accordingly, the Court GRANTS summary judgment on the battery cause of action.

////

**F. False Imprisonment**

Defendant seeks summary judgment arguing that because Plaintiff was not arrested at the airport and she was detained for only two or three minutes before the police arrived and told her she was not being arrested. Alternatively, it contends that Plaintiff admitted to have committed a battery on Redelfs by touching him, therefore he was justified in a effecting a citizen's arrest.

The "elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however short." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994) (merchant's arrest). "Restraint may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers or by means of any other form of unreasonable duress." Id. (internal citations omitted). "The length of time can be as brief as 15 minutes." Id. However, the 15 minutes asserted in Fermino was not meant to set a floor. Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 976-77 (E.D. Cal. 2016) (citing cases) (denying summary judgment as a jury will have to determine whether 2 to 3 minutes was an "appreciable period of time").

Here, the question of whether the 2 to 3 minute wait for the DFW police to arrive constitutes an appreciable period of time is one for the jury. See id. Further, Defendant's argument that Redelfs was justified in effectuating a citizen's arrest based on the battery committed by Plaintiff on Redelfs is a question also for the jury. Plaintiff testified that she touched Redelfs on the shoulder in order to get his attention. She has raised an issue of fact whether her touching was harmful or offensive and constituted battery on Redelfs. See Brown, 171 Cal. App. 4th 536-27. Accordingly, the Court DENIES Defendant's motion for summary judgment on the false imprisonment cause of action.

**G. Negligence**

Defendant seeks summary judgment on the negligence claim arguing that the standard of care is whether AA acted reasonably when it refused to transport to Plaintiff

under § 44902. Plaintiff responds that there is a question of fact whether the defendant breached its duty of care to plaintiff as a common carrier.

The elements of a negligence claim are: 1) the defendant owed a legal duty to the plaintiff; 2) the defendant breached this duty; and 3) the defendant's breach proximately caused the plaintiff's injuries. Wiener v. Southcoast Childcare Ctrs., Inc., 32 Cal.4th 1138, 1142 (2004).

Both parties assume that the standard of care under § 44902 applies, whether it was reasonable for AA to refuse transport to Plaintiff as held in Cordero v. Cia Mexicana De Aviacion, S.A., 681 F.2d 669, 672 (9th Cir. 1982). However, as discussed above, the Court held that the state law claims were not preempted by § 44902 because Plaintiff's claims do not directly implicate airline safety. Therefore, the Court looks to California law on a common carrier's duty of care.

Under California law, a common carrier "owe[s] both a duty of utmost care and the vigilance of a very cautious person towards [its] passengers." Andrews v. United Airlines, 24 F.3d 39, 40 (9th Cir. 1994) (citations omitted). In a negligence action, "[b]reach of duty is usually a fact issue for the [fact finder]; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the boundaries of ordinary care, the doubt must be resolved as an issue of fact by the [fact finder] rather than of law by the court." Ishmael v. Millington, 241 Cal. App. 2d 520, 525 (1966). Moreover, whether the breach caused the damage is also a question for the jury. Id. at 526.

Here because neither party has sufficiently argued the proper standard of care, the Court DENIES Defendant's motion for summary judgment on the negligence claim as factually and legally unsupported.

**H.    Intentional Infliction of Emotional Distress**

Defendant argues the intentional infliction of emotional distress claim should be dismissed because Defendant acted lawfully in response to the battery she committed on Redelfs and its actions do not constitute extreme and outrageous conduct. Plaintiff

15

summarily states that there is an issue of fact whether Defendant's conduct was extreme and outrageous.

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998). The California Supreme Court has set a "high bar" to demonstrate severe emotional distress. Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" Id. (citation omitted).

Here, Defendant argues it was justified in its action based on the battery Plaintiff committed on Redefls. However, as discussed earlier, there is an issue of fact whether Plaintiff committed a battery, and thus, there is an issue of fact whether Defendant's conduct in response constituted extreme and outrageous conduct. Accordingly, the Court DENIES Defendant's motion for summary judgment on the claim for intentional infliction of emotional distress.

**I.     Punitive Damages**

Defendant maintains that Plaintiff cannot demonstrate she is entitled to a punitive damages award because she has not demonstrated that Redelfs was an officer, director or managing agent who acted with oppression fraud or malice. Plaintiff responds that AA ratified Redelfs conduct and failed to investigate it at the time. Both Redelfs and his supervisor Jayasuriya cancelled Plaintiff's flight without even a cursory investigation.

A plaintiff is entitled to punitive damages when she can show by "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."

16

17cv2513-GPC(JLB)

Cal. Civ. Code § 3294.[4]  When the defendant is a corporation, the evidence must demonstrate that an officer, director or managing agent of Defendant, with advance knowledge of the employee's unfitness, committed, consciously disregarded, authorized or ratified an act of malice, oppression or fraud.  Id.

In assessing whether an employee is an officer, director, or managing agent for purposes of section 3294, the California Supreme Court has taken a more narrow view of the term "managing agent" and held managing agents include "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." White v. Ultramar, Inc., 21 Cal. 4th 563, 566-67 (1999).  A "managing agent" is one with substantial authority over [corporate policy]."  Cruz v. HomeBase, 83 Cal. App. 160, 167-68 (2000) (section 3294 "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders.").

Here, Redelfs could not place Plaintiff in "no go" status but had to inform his supervisor of the incident who then placed Plaintiff in "no go" status.  Therefore, Plaintiff has not demonstrated an issue of fact that Redefls was an officer, director or managing

---

[4] Section 3294 provides,

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civil Code § 3294.

agent with substantial authority over corporate policy. The questions becomes whether Redelfs' supervisor, Jayasauriya, who had the authority to place Plaintiff's ticket in a "no go" status is an officer, director, or managing agent as defined under section 3294. Defendant has failed to address this question. Accordingly, the Court DENIES Defendant's motion for summary judgment on punitive damages.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment. Specifically, the Court GRANTS the causes of action for violation of § 44902(b) of the FAA, breach of contract, and assault and battery. The Court DENIES summary judgment on the claims for negligence, false imprisonment, intentional infliction of emotional distress and punitive damages. The hearing set for April 5, 2019 shall be **vacated**.

IT IS SO ORDERED.

Dated: April 3, 2019

Hon. Gonzalo P. Curiel
United States District Judge